**AFFIRMED IN PART; REVERSED and REMANDED IN PART and Opinion Filed December 23, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-00744-CV

**ROBBIE LESA HAMES HORTON, Appellant**

**V.**

**KIMBERLY A. STOVALL, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-14190**

## MEMORANDUM OPINION ON REMAND

Before Justices Pedersen, III,[1] Reichek,[2] and Evans

In this case remanded from the Supreme Court of Texas,[3] Robbie Lesa Hames Horton appeals from the trial court's granting of three interlocutory summary judgments in favor of appellee Kimberly A. Stovall.[4] Horton also appeals an order

---

[1] The Honorable Justice Bill Pedersen, III succeeded the Honorable Justice Jason Boatright, a member of the original panel on this appeal.

[2] The Honorable Justice Amanda Reichek succeeded the Honorable Justice Molly Francis, a member of the original panel on this appeal.

[3] *Horton v. Stovall*, 591 S.W.3d 567 (Tex. 2019) (per curiam).

[4] Stovall died during this appeal. Her surviving spouse filed a suggestion of death and ratified and adopted all briefs filed after Stovall's death which were filed with the surviving spouse's knowledge and authorization. We continue using Stovall's name. *See* TEX. R. APP. P. 7.1(a)(1).

of severance and abatement of one of her counterclaims related to an account at JP Morgan Chase Bank, N.A. (The three partial summary judgment orders were final and appealable as a result of the order of severance and nonsuits of certain other claims). On the amended briefs before us on remand, we conclude the trial court erred in granting the summary judgment motions except the relief that Horton take nothing on her counterclaims for conversion of $56,000 in cash, invasion of privacy, unjust enrichment, and breach of contract regarding transfer of title to a 2009 Mercedes, which we affirm. We also affirm the order of severance and abatement but direct the trial court to consolidate the severed action upon remand. Accordingly, we reverse in part and affirm in part the trial court's judgment, and remand the case to the trial court for further proceedings consistent with this opinion

## I.
### AMENDED BRIEFS

In Stovall's amended response brief, she challenges the scope of Horton's amended brief and our order permitting the parties to file amended briefs on remand. She complains we allowed Horton to re-brief too much; that we should have limited Horton's brief on remand to merely correcting citations or supplying omitted citations. Stovall complains that, in addition to deficiencies with citations in Horton's original brief, there were deficiencies with substantive arguments which Horton's amended brief rectified. Stovall crystalizes the issue well:

> Instead of filing a brief that simply corrected a few citations to the clerk's record, Appellant re-wrote her brief, adding arguments and

theories that were absent from the original appeal, and changing her Issues from 6 to 5. Appellee moves this honorable Court to find that new arguments have been waived by Appellant failing to timely assert the same.[5]

Horton urges we follow the supreme court's statement, "Rather than disposing of appeals based on harmless procedural defects, 'appellate courts should reach the merits of an appeal whenever reasonably possible.'" *Horton v. Stovall*, 591 S.W.3d 567 (Tex. 2019) (per curiam) (quoting *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008)). Horton continues her argument, "This should include not only the formal deficiencies complained of in the present case, but substantive deficiencies as addressed in *Flakes*, as well as corrections necessary to comply with the requirement of Tex. R. App. P. 38(i) that argument be 'clear and concise,' as specifically referenced in the Court's February 10[, 2020] order." *See id.*; *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211 (Tex. 2020). Horton explains,

> Thus, Appellant appropriately addressed alternative grounds raised in Stovall's summary judgment motions that were omitted from Appellant's original brief and which, while clearly lacking merit, might nonetheless have prevented the Court from reaching the merits if left unaddressed. Appellant likewise clarified her arguments, within the bounds of the summary judgment record, to ensure that they were not obscured by argument that was not clear and concise in Appellant's original brief.

We agree with both parties that Horton's original brief had deficiencies in some of its substantive arguments. But we agree with Horton that in the posture of

---

[5] We note Stovall accepts new concessions Horton makes in her amended brief on remand stating, "To her credit, Appellant Horton now concedes that summary judgment on the statute of limitations for the tort claims was appropriate." See analysis of issue three, *infra*.

this appeal we appropriately reject the limitations Stovall seeks to impose on Horton's amended brief or our order permitting her to file it. Instead, we authorized and have considered Horton's amended brief and Stovall's amended response brief, for the following reasons.

The supreme court observed our prior opinion had "treated Horton's citations to her appendix as citations to the portion of the appellate record indicated on each appendix document." *Horton*, 591 S.W.3d at 568. We had decided those referenced documents did not support Horton's arguments because the documents cited were not located in the record of the challenged summary judgments; instead they were located elsewhere in the clerk's record. The supreme court agreed with Horton that we either should have searched the record for copies of those documents to locate copies of them in the summary judgment record that would support Horton's argument or we should have utilized rule 38.9 and provided Horton an opportunity to re-brief. *Id*. at 569-70; see TEX. R. APP. P. 38.9. The supreme court announced this rule:

> We agree with Horton that, at a minimum, she was entitled to a reasonable opportunity to correct the defective record citations in her appendix documents, which the appeals court knew were actually included in the summary-judgment record. When relevant evidence has been properly presented to the trial court and included in the record for appellate review, but a court is aware that a litigant's brief or appendix incorrectly indicates the location of that evidence in the record, *rules 38.9 and 44.3 require the court to apprise the parties and allow an opportunity for correction* if the citation errors thwart a merits-based disposition.

*Horton*, 591 S.W.3d at 569 (emphasis added). The supreme court added,

> Courts are not required to comb through the record to find evidence to support a party's appellate issues, but nothing prevents courts from undertaking reasonable efforts to locate evidence described in a party's brief—a task made less burdensome when the record is filed electronically. The dissenting justice did so here.

*Id.* at 570 (emphasis added). Thus, we have been directed to (1) search the appellate record for documents described in an appellant's brief, if what is cited is inconsistent with the description in the brief; (2) search the appellate record for a copy of a cited or described document in a location in the record necessary for an appellant's argument, if the cited document is in the record at a location that was not before the trial court when making the decision challenged on appeal; or (3) notify appellant she has briefing deficiencies and provide an opportunity to file an amended brief pursuant to rule 38.9. On the other hand, we have not been directed to generally "comb through the record to find evidence to support a party's appellate issues." *Id*.

We begin addressing Stovall's objection to the scope of the re-briefing we authorized by affirming Stovall's constitutionally justifiable expectation that we not assist Horton with her brief or argument; Horton has the reciprocal, justifiable expectation that we not assist Stovall. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 248 (1980) (due process in Fifth Amendment to United States Constitution guarantees an "impartial and disinterested tribunal in both civil and criminal cases"); *Earley v. State*, 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi 1993, no pet.) (due process clause in article I, sections 13 and 19 of the Texas Constitution requires

judges to be neutral and detached); *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (judge should not act as advocate nor adversary for any party); *see also* TEX. CODE JUD. CONDUCT, Canon 2A, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. C ("A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."). We understand when we carry out our duties we must not identify issues and arguments not raised by an appellant. *See Greenlaw v. United States*, 554 U.S. 237 (2008) (Ginsburg, J., for majority); *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) (Ginsburg, J., for majority). The United States Supreme Court explained in *Greenlaw* that the principle of party presentation embodies the appropriate judicial neutrality:

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a pro se litigant's rights. *See Castro v. United States*, 540 U.S. 375, 381–383, 124 S. Ct. 786, 157 L.Ed.2d 778 (2003). But as a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Id.*, at 386, 124 S. Ct. 786 (Scalia, J., concurring in part and concurring in judgment).

554 U.S. at 243–44 (footnotes omitted).

Upon receipt of the mandate from the supreme court and consistent with the principle of party presentation, we immediately notified the parties Horton "may,

but is not required to, supplement, amend, or correct any briefing deficiency," and if she did so, Stovall could file a supplemental or amended response brief. We did not point out any omitted argument, any argument not asserted coherently or correctly, or specifically identify any deficient citation to the record or authorities. The parties elected to file amended briefs.

We had two reasons for authorizing Horton to fully re-brief her issues. First, the supreme court allows parties to make new arguments not presented to intermediate appellate courts. *See Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider issues that were not raised in the courts below, but parties are free to construct new arguments in support of issues properly before the Court."); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896–97 (Tex. 2018) (appellant "was not required on appeal or at trial to rely on precisely the same case law or statutory subpart that we now find persuasive."); *Marino v. King*, 355 S.W.3d 629, 634 (Tex. 2011) ("Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults."). Here, Stovall argues the supreme court did not *require* us to permit Horton to file an amended brief on remand as opposed to a brief that merely corrected citations. Although Stovall is correct, nothing in the supreme court's order of remand prohibited Horton or Stovall from making new arguments before us and certainly did not prohibit new arguments later before the supreme court. So, authorizing rebriefing that provided the opportunity for new or more complete

arguments presented to us provided us with the greatest opportunity to decide the arguments Horton may have the opportunity subsequently to assert to the supreme court.

Second, Stovall does not contest we were directed by the supreme court, among other options, to allow Horton to file an amended brief pursuant to rule 38.9 that at least included correct record citations. *See supra* n. 5. But, we also had the authority to authorize an amended brief to address "the 'unbriefed issue' [because it] was 'fairly included' in or 'inextricably entwined' with a briefed issue." *Flakes*, 595 S.W.3d at 216. The 'unbriefed, inextricably entwined issue' is exceedingly difficult for an intermediate court of appeals to discern precisely because it is not briefed. So, in this context where pursuant to the supreme court's directive regarding citation deficiencies we planned to notify Horton there were unspecified briefing deficiencies and permit a corrected brief, it was judicially efficient to permit Horton to amend her brief as she decided was best for her. Doing so provides this Court with the opportunity to fully reach the merits of Horton's appellate complaints as the supreme court directed us to do. *See Horton*, 591 S.W.3d 567; *Perry*, 272 S.W.3d at 587.

Stovall relies on *Dodd v. City of Beverly Hills*, 78 S.W.3d 509, 512 (Tex. App.—Waco 2002, pet. denied) to argue it is not permissible for Horton to fully

rebrief her appeal on remand.[6]  But the court in *Dodd* did not decide anything about briefing on remand because the case was not before the court on remand.  *Id*.  Instead, the court in *Dodd* decided an appellant's argument asserted for the first time in appellant's opening brief was one that had not been preserved in the trial court.  78 S.W.3d at 513 n.6.  In our order, we did not abrogate the requirement of appellate preservation.  Horton correctly understood her amended brief must meet the requirement of appellate preservation because she acknowledges her lack of preservation of genuine, material factual issues by failing to have meaningfully responded in the trial court to Stovall's second motion for summary judgment regarding tort counterclaims we discuss in issue three.  So, *Dodd* does not support Stovall's argument for limited scope of amended briefing on remand.

For these reasons, we reject Stovall's briefing-objections to our order and Horton's amended brief, and we consider both parties' amended briefs.

## II.
### BACKGROUND

This case arises from the breakup of a  domestic and business relationship between Horton and Stovall before *Obergefeld*.[7]  Both the supreme court and this Court previously described much of the factual background.  *See Horton*, 591

---

[6] Stovall argues, "Having failed to brief the point previously, the Court should find that Appellant waived the right to challenge this previously unchallenged point."  Stovall refers to Horton's new arguments about res judicata and collateral estoppel that we analyze in the first and second issues.

[7] *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).

S.W.3d 567; *Horton*, 588 S.W.3d 661. The breakup led to a handwritten[8] Settlement

Agreement[9] at issue in this appeal:

> This agreement is entered into on this the 28th day of July 2012 between [Stovall] and [Horton].
>
> 2009 450 Mercedes (currently in the possession of [Horton]) This vehicle was purchased by Stovall & Associates, P.C. on or about 02/07/2012 for the sum of approximately $50,000.00. [Stovall]/Stovall & Associates, P.C. ("S&A") agrees to transfer the title to said vehicle to [Horton]
>
> [Provisions regarding Stovall's ownership and continued possession of other vehicles are omitted.]
>
> ### SPAIN PROPERTY
>
> [Set forth later under the analysis of the first and second issues].
>
> ### Jewelry and Personnal [sic] Items
>
> [Stovall] has delivered all personal items belonging to [Horton] found at 3401 Centenary and 6601 LBJ Freeway, #180, Dallas, Texas to a storage facility located in Dallas, Texas. [Stovall] has provided [Horton] a key to said storage unit and the passcode to gain entry.
>
> [Six items of jewelry in five categories are described as having been gifted previously by Stovall to Horton].
>
> [Stovall] to hand deliver to [Horton] all of the above jewelry on 07/29/2012.
>
> [Stovall] is executing two personal checks and giving them to [Horton] today as follows: (1) $50,000.00 (as advance for all further renovations

---

[8] The Settlement Agreement appears to be written in more than one handwriting. Punctuation is omitted in places and, being handwritten, some words are partially in all capitalization and capitalization occurs in the middle of some sentences. The parties do not attribute significance to these scrivener matters, so neither do we and we did not reduplicate scrivener matters in setting forth the text of the agreement.

[9] In their briefs, both parties use Settlement Agreement as the name of the agreement. At places, Horton disputes it was a settlement agreement at all, pointing out it never states it settled any claim or dispute. We do not reach the issue whether the agreement is or is not a settlement, but we use Settlement Agreement throughout this opinion consistent with the parties' briefs.

labor costs on Spain Property) [and] (2) $50,000.00 (for living expenses, etc.)

[Stovall] will advance on or before Monday 07/30/2012 an additional $25,000.00 to Banco Popular Group per email instructions from [Horton] said funds will be wire transferred and receipt e-mailed to [Horton] at [email address].

### 3401 Centenary

[Horton] agrees that she has no ownership interest in the house at 3401 Centenary Ave., Dallas, Texas 75225. [Stovall] agrees that [Horton] owes no money for prior occupancy by her and her children nor does she owe any money for the indebtedness incurred solely by [Stovall] with respect to said property.

[Horton] acknowledges that there has been nothing illegal or improper with respect to client funds received by [Stoval & Associates], including but not limited to funds received/paid in connection with the [James David Horton] case.

On or before July 30, 2012[,] [Stovall] will review the account [illegible mark] of [Stovall] + [Horton] to refund deposits of paychecks.

The Settlement Agreement bears each woman's signature above the date July 28, 2012.

In this lawsuit, both sides allege the other first, materially breached the Settlement Agreement. In addition, Horton alleged Stovall committed several torts. Stovall moved for three partial summary judgments disposing of her claims and Horton's counterclaims, with the exception of Horton's claims regarding a JP Morgan Chase Bank, N.A. account that the trial court severed and abated. On appeal, Horton challenges these orders. We first address the summary judgments, then analyze the order of severance and abatement.

# III.
## APPLICABLE LAW

### *Summary Judgments*

We affirm a traditional summary judgment if in her motion a movant establishes as a matter of law all elements of her claim, all elements of an affirmative defense to a counterclaim, or disproves at least one element of a counterclaim, and the non-movant fails to bring forward evidence creating a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(c); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999) (summary judgment movant on own claims must conclusively prove all essential elements of the claim); *Adams v. Oncor Elec. Delivery Co., L.L.C.*, 385 S.W.3d 678, 681 (Tex. App.—Dallas 2012, no pet.) (movant seeking summary judgment on non-movant's claims must establish all elements of affirmative defense or disprove at least one element of claim). We affirm no-evidence summary judgments unless the non-moving party demonstrates she brought forth in the trial court more than a scintilla of probative evidence to raise a genuine issue of material fact on each challenged element of her cause of action. *See* TEX. R. CIV. P. 166a(i)*; Adams*, 385 S.W.3d at 681. We conduct a de novo review of the trial court's summary judgment, examining the record in the light most favorable to the non-movant, indulging every reasonable inference in her favor, and resolving any doubt against the movant. *See Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex. App.—Dallas 2007, pet. denied). Whether responding to a traditional or no-evidence motion for summary judgment, the non-movant never has

–12–

a burden to marshal her evidence; her evidentiary burden is to present evidence that raises a genuine issue regarding a material fact sufficient to defeat the movant's traditional proof or that addresses the element challenged as being unsupported by any evidence. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

The record on which the trial court makes its summary judgment decision and on which we review the summary judgment is created by the movant and non-movant filing the evidence on which they rely as attachments to their respective motion or response, or by reference to appendices they file. *See* TEX. R. CIV. P. 166a(a) (attachment by movant), (b) (attachment by non-movant), (d) (appendices filed and referred to by either movant or non-movant). Unless the appellate record clearly indicates the trial court considered evidence outside the summary judgment record, we will not consider evidence elsewhere in the trial court's file such as a response to a different motion for summary judgment or evidence supporting a motion for new trial. *See Saenz v. S. Union Gas Co.*, 999 S.W.2d 490, 494 (Tex. App.—El Paso 1999, pet. denied) (no request for trial court to take judicial notice of evidence attached to response to previous motion for summary judgment, that evidence was not considered by trial or appellate courts); *Lee v. Palacios*, No. 14-06-00428-CV, 2007 WL 2990277, at *2 (Tex. App.—Houston [14th Dist.] Oct. 11, 2007, pet. denied) (mem. op.) (evidence attached to non-movant's motion for new trial filed after summary judgment granted not considered by trial or appellate courts). Where the summary judgment order contains a recital that the trial court

considered the "evidence and arguments of counsel" without any limitation, "we have no basis to conclude the trial court did not consider all summary-judgment evidence on file at the time the motion was heard." *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 262 (Tex. 2020) (emphasis added). So, we must consider "all the summary-judgment evidence on file" when we conduct our appellate review. *Id.*

In summary, we may not reverse a summary judgment unless an appellant establishes by her argument in her brief that based on the summary judgment record before the trial court for the particular motion for summary judgment on which the trial court ruled "the trial court made an error of law" that "(1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1.

### *Severance and Abatement Order*

We review a severance order for an abuse of discretion. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). A trial court has broad discretion in matters of severance and consolidation of causes. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). Claims and grounds for recovery may be severed and "[a]ny claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. A trial court does not abuse its discretion and properly severs claims when:

(1) the controversy involves more than one cause of action; (2) the severed claim is one that could be asserted independently in a separate lawsuit; and (3) the severed actions are not so interwoven with the other claims that they involve the same facts and issues.

*Liberty Nat. Fire Ins. Co.,* 927 S.W.2d at 629 (citing *Guaranty Fed.*, 793 S.W.2d at 658). With these appellate standards in mind, we review Horton's issues.

## IV.
### ANALYSIS

### First & Second Issues: Genuine, Material Factual Issues Precluded the March 6, 2015 Partial Summary Judgment (Centenary Avenue Property)

Horton's first two issues address her challenges to the first summary judgment signed on March 6, 2015. In Stovall's motion for summary judgment (entitled amended motion for summary judgment), Stovall sought to establish as a matter of law Horton breached the Settlement Agreement by filing in the deed records on September 7, 2012 an "Affidavit of Fact" and an alleged "Quitclaim Deed" by which Horton claimed an ownership interest in the Centenary Property. Stovall further sought summary judgment on her declaratory relief as to her sole ownership of the Centenary Avenue property and entitlement to the proceeds from the sale of the Centenary Avenue property, which were being held in the registry of the court. Stovall's motion also defensively sought a take-nothing judgment on Horton's counterclaim for declaratory relief pertaining to Horton's claimed ownership interest in the Centenary Avenue property. Horton had filed a counterclaim seeking declarations that she had been conveyed and continued to own a one-half interest in

–15–

the Centenary Avenue property and that what she filed in the deed records constituted a valid conveyance to her of her interest. The trial court's partial summary judgment generally granted Stovall's amended motion for partial summary judgment, ordered that Stovall was entitled to judgment in the amount of $245,585.64, and ordered that Horton take nothing on her counterclaim for declaratory judgment regarding the Centenary Avenue property.

### Horton's Affidavit

Horton relied on her own affidavit in her response to Stovall's motion for summary judgment. Stovall argues Horton's affidavit is rife with conclusory statements that amount to no evidence and that Stovall can assert these objections for the first time on appeal. Horton's affidavit constituting no evidence, Stovall continues, results in Horton having failed to raise genuine issues of material fact necessitating affirmance of the summary judgments. Horton responds Stovall waived these objections by not obtaining rulings from the trial court on her objections.

An objection that affidavit statements are conclusory is one of the few exceptions to the requirement of preservation of the record in the trial court for appellate review. We have decided repeatedly for at least five decades that conclusory affidavit statements are defects of substance that may be raised for the first time on appeal. *See e.g. Fuhrmann v. C & J Gray Invs. Partners, Ltd.*, No. 05-18-00683-CV, 2019 WL 3798181, at *7 n.14 (Tex. App.—Dallas Aug. 13, 2019, no

–16–

pet.) (mem. op.) ("[a] contention that an affidavit is conclusory raises a defect of substance and may be raised for the first time on appeal." quoting *Hill v. Hill*, 460 S.W.3d 751, 757 (Tex. App.—Dallas 2015, pet. denied)); *Gross v. Methodist Hosps. of Dallas*, No. 05-00-02124-CV, 2002 WL 1380399, at \*4 (Tex. App.—Dallas June 27, 2002, no pet.) (party "is not precluded from raising a complaint for the first time on appeal that the summary judgment proof is defective in substance, and the complaint that the affidavit is not competent summary judgment proof because it is conclusory is raising a defect of substance."); *Habern v. Commonwealth Nat'l Bank*, 479 S.W.2d 99, 100-01 (Tex. Civ. App.—Dallas 1972, no writ) (bank officer's affidavit statements that borrowing entity was alter ego of owner without any factual basis in affidavit were conclusory, a substantive defect that could be raised for the first time on appeal; citing *Crain v. Davis*, 417 S.W.2d 53, 55 (Tex. 1967) ("Statements contained in affidavits offered to support a motion for summary judgment that are but mere conclusions are insufficient to warrant the entry of such a judgment.")). So, Stovall may raise on appeal for the first time objections that some of Horton's statements are conclusory.

Stovall objects Horton's summary statement, "Stovall breached the contract we signed," is conclusory. Stovall argues the statement is conclusory because it fails to explain the basis for the statement citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.1999) (affidavit is conclusory if it fails to explain basis for affiant's statements by linking conclusions to facts). To the extent we decide some of Horton's

–17–

statements that follow are sufficiently grounded in facts so that they are not conclusory, we overrule Stovall's objection to Horton's introductory, summary statement that Stovall breached the Settlement Agreement.

We construe Stovall's brief[10] as objecting to Horton's statement, "Stovall did not transfer $25,000.00 on or before 7/30/2012 as required by the contract." Instead, Stovall argues the contract language did not obligate her specifically to transfer $25,000 on or before July 30, 2012 (a matter we discuss latter) and Stovall impeaches the statement with contrary evidence in the summary judgment record— principally Stovall's version of the facts. These arguments go to the merits of the trial court's summary judgment ruling, but do not support the objection that Horton's statement is conclusory. Stovall does not explain what is conclusory about the denial that funds were transferred on or before July 30, 2012. There being no other argument why the statement is conclusory, we overrule Stovall's objection to Horton's statement, "Stovall did not transfer $25,000.00 on or before 7/30/2012."

Stovall objects to Horton's statement as being conclusory: "Stovall did not return my money from my personal bank account of 345,090.24 (account no. 991351636)." Stovall disputes that the Settlement Agreement requires anything regarding $345,090.24 related to the specific account and objects Horton's statement is conclusory because it does not comport with the requirement of the Settlement

---

[10] Several of Stovall's challenges address statements in Horton's brief that summarize statements in Horton's affidavit. We focus on the statements in the affidavit.

Agreement. Stovall also argues Horton's statement is conclusory because it does not provide evidence the funds totaling $345,090.24 were the proceeds of paychecks which was the subject matter of the provision in the Settlement Agreement. Stovall's arguments again relate to the merits of the trial court's summary judgment ruling, not to whether the statement is conclusory. There being no other argument, we overrule Stovall's objection.

Stovall objects to two statements which Horton made about valuation as being conclusory. The first is, "Stovall did not return my personal property worth 300,000.00." The second is, "Stovall did not transferring [sic] the title to the 2009 450 Mercedes to me worth $55,000." Stovall asserts Horton's statements are conclusory because they fail to provide any support for the valuation opinions. A valuation opinion that does not explain the basis underlying the opinion is conclusory and no evidence of value. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 161 (Tex. 2012) (landowner's opinion testimony was conclusory and no evidence even though he demonstrated that he was familiar with market values in the area because he failed to explain the factual basis behind his determination of the diminution in property value to which he opined); *see generally City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (reasoning that "if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence"). Because Horton's affidavit does not provide any support for the basis

of the opinion of value of the properties, Horton's affidavit is conclusory and does not support any valuation regarding those properties.

### *Prior Material Breach*

Horton argues the summary judgment was erroneous because Horton raised genuine issues of material fact through her affidavit and other evidence in response. Horton's response asserted among other arguments Stovall first materially breached the Settlement Agreement alleging a list of breaches by Stovall. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."). One breach to which Horton's testified in her affidavit is, "Stovall did not transfer $25,000.00 on or before 7/30/2012." Horton relies on *Hewitt v. Biscaro* to assert Stovall's failure to make timely payment under the Settlement Agreement is a prior material breach excusing Horton's subsequent performance. 353 S.W.3d 304, 311 (Tex. App.—Dallas 2011, no pet.) (failure to make timely payment under a settlement agreement is a prior, material breach excusing performance by the other party).[11] One of the attachments to Horton's affidavit was

---

[11] "In determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance." *Hernandez v. Gulf Group Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994) (citing RESTATEMENT § 241(a)). Restatement § 241(a) provides:

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

a letter dated August 21, 2012 with the subject line, "CANCELLATION OF 7-28-2012 CONTRACT," in which Horton wrote to Stovall,

> You have breached the contract as you did not advance funds of 25,000.00 on or before 07-30-2012; return all personal items belonging to me; did not transfer the title of the 2009 450 Mercedes; and did not return the paychecks on or before 07-30-2012. The breach is material.

Horton's assertion pertains to the provision in the Settlement Agreement:

> [Stovall] will advance on or before Monday 07/30/2012 an additional $25,000.00 to Banco Popular Group per email instructions from [Horton] said funds will be wire transferred and receipt e-mailed to [Horton] at [email address].

Horton's affidavit provides a statement of fact supporting Horton's contention that Horton's performance is excused by Stovall's prior material breach.

### *Unpleaded Affirmative Defense*

Stovall correctly argues that among Horton's many, alternative defenses she did not plead prior material breach of contract. Stovall argues that pleading defect precludes Horton from asserting Stovall's prior material breach in response to the summary judgment motion.

---

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

RESTATEMENT OF CONTRACTS (SECOND) § 241(a) (1981).

Stovall does not assert she lacked notice that Horton pleaded as a counterclaim that Stovall first materially breached the Settlement Agreement no later than July 30, 2012 for which Horton prayed for the same proceeds of the sale of the Centenary Avenue property being held in the registry of the trial court. Consistent with Stovall's awareness that the claim was in the lawsuit, Stovall did not object that Horton's summary judgment theory or evidence of prior material breach was unpleaded. Horton argues and we agree that in summary judgment procedure "unpleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *followed by Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 537 (Tex. 2019) (even though pleading requirement was raised for first time on motion for new trial, "Wells Fargo waived Godoy's alleged pleading error by not raising it in the trial court prior to [summary] judgment"); *Nemeth v. Republic Title of Tex., Inc.*, No. 05-17-00928-CV, 2018 WL 3062393, at *2 (Tex. App.—Dallas June 21, 2018, no pet.) (unpleaded affirmative defense to which no objection was made could serve as basis for summary judgment ruling). Accordingly, Horton's prior material breach theory and evidence was before the trial court when it granted Stovall's motion for summary judgment and should have been considered.

### *Time Not of the Essence*

Stovall argues her failure to transfer the $25,000 on or before July 30, 2012 or by the time Horton filed the documents in the deed records on September 7, 2012 was not a breach of the Settlement Agreement. Stovall argues the agreement did not provide that time was of the essence and that under Texas law, "time" is not ordinarily of the essence, and even a date stated for performance does not mean or imply time is of the essence. Stovall relies on *Capcor at KirbyMain, L.L.C. v. Moody Nat. Kirby Houston S, L.L.C.*, 509 S.W.3d 379, 390 (Tex. App.—Houston [1st Dist.] 2014, no pet.). *Capcor* was an appeal from an adverse judgment after a jury trial. In *Capcor*, the court determined that time was of the essence in the contract and that the non-performing party's proposed jury issue on material breach directly contradicted the performance terms of the contract that expressly allowed the other party to cancel the contract if the non-performing party failed to deliver funds to a closing agent. *Id.*

Stovall also relies on *Mobilelink San Antonio, LLC v. PNK Wireless Commc'n, Inc.*, No. 01-15-01048-CV, 2016 WL 7368066 (Tex. App.—Houston [1st Dist.] Dec. 20, 2016, no pet.) (mem. op.) for the statement, "late performance generally is not a material breach of a contract." 2016 WL 7368066, at *3. *Mobilelink* was an appeal from a judgment resulting from a bench trial. 2016 WL 7368066, at *2. Without findings of fact or conclusions of law, the appellate court implied all findings necessary to support the judgment. *Id.* "The contract provided

–23–

that 'time is of the essence' and that the contract closing would take place three days after the date of the contract. 2016 WL 7368066, at *1. In *Mobilelink*, the appellant could not prove the other party first materially breached the contract because the trial court could have found the acceptance of late performance payments waived the prior material breach. 2016 WL 7368066, at *3.

Here, Horton appeals adverse summary judgments where she only had the burden to raise more than a scintilla of evidence of a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(c). *Capcor* and *Mobilelink* involved appeals of adverse judgments after trials on the merits where appellants had the burden to demonstrate they proved as a matter of law their adversaries' prior material breaches. Horton produced evidence that Stovall was obligated by the Settlement Agreement to transfer $25,000 by July 30, 2012, Stovall did not do so by September 7, 2012 despite Horton's two letters in August warning Stovall was in material breach of the contract for failing to make the July 30 transfer of $25,000. Horton thereafter treated Stovall as in breach of the contract and filed in the deed records the documents pertaining to title to the Centenary Avenue property about which Stovall complains. "Unless the contract expressly makes time of the essence, the issue [whether untimely performance is a material breach] is a fact question for the jury." *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Siderius, Inc. v. Wallace Co.*, 583 S.W.2d 852, 863 (Tex. Civ. App.—Tyler 1979, no writ)). Stovall has not provided a reason why Horton did not raise a

–24–

genuine, material factual issue regarding Stovall's prior material breach that the trier of fact must decide.

### *Stovall's Evidence She Did Not Breach*

Stovall argues she "provided competent evidence that the sum was paid at Stovall's instruction with money in the possession of Horton's husband, and that the contractors for which the money was to be 'advanced' were, in fact, paid with that money." Horton points out, "The documents Stovall relies on to claim that the wire to James David Horton was in substitute show that this wire was for a different amount ($50,000) and was sent on July 2, 2012, before the Settlement Agreement existed." In essence, Stovall argues she should win the factual dispute created by Horton's statement that she failed to transfer $25,000 by July 30, 2012. But when opposing Stovall's motion for summary judgment, Horton did not have the burden to establish Stovall's prior material breach conclusively as a matter of law or even persuasively; in other words, Horton does not have to win the factual argument. Instead, Horton's obligation was to bring forward more than a scintilla of evidence supporting a genuine, material factual issue regarding her affirmative defense of Stovall's prior material breach. TEX. R. CIV. P. 166a(c). We decided above Horton did so.

### *Horton's Continued Performance*

Stovall argues even if she was the first to materially breach the Settlement Agreement, Horton's continuation of renovations of their property in Spain to get it

–25–

ready for sale was Horton's election to not treat Stovall's prior material breach as terminating the agreement citing *Henry v. Masson*, 333 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) and *Levco Constr., Inc. v. Whole Foods Mkt. Rocky Mountain/Sw. L.P.*, 549 S.W.3d 618, 643 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Stovall's argument assumes the Settlement Agreement obligated Horton to finish the renovations of the property in Spain. Horton argues it does not impose that obligation on her.

The entire provision of the Settlement Agreement regarding the property in Spain is as follows:

<u>SPAIN PROPERTY</u>

In consideration of the approximately $500,000.00 paid to date to various vendors, attorneys, Premier Corporate Law, Pablo Anderson, etc. [Stovall]/S&A, P.C. will retain ½ interest in said home and in all corporations created in Spain in connection with said property, including but not limited to, Ashcroft, Inc. and [indecipherable name]. Said ½ (50%) ownership shall never be revoked, cancelled, dissolved without the express written agreement of [Stovall]. Any and all Powers of Attorney allowing [Horton] and/or any attorney, including but not limited to, Pablo Anderson/Premier Corporate Law to act on behalf of [Stovall]/S&A are hereby REVOKED.

[Horton] is to provide complete copies of any and all documents concerning ownership of said property.

*It is the intention of the Parties to complete the renovation of said property at which time the parties will sell the property and divide the sale proceeds after deduction of any further expenses advanced*[.]

(Emphasis added). In the first paragraph, Stovall obtained clarification of her one-half ownership interest in consideration of Stovall's previous funding of $500,000.

In the second paragraph, Horton obligated herself to provide documents concerning

–26–

ownership of the property. But the declaration of the parties' mutual intention to complete renovations and sell the property contained in the third paragraph does not obligate Horton to perform those renovations any more than it obligates Stovall to perform those renovations. So, Horton's work to complete the renovations cannot constitute performance of the Settlement Agreement. Moreover, Stovall does not argue about Horton's compliance with her obligation to provide documentation of ownership in the property. So as the summary judgment movant, Stovall has not established as a matter of law that Horton continued to perform under the Settlement Agreement. Stovall, therefore, has not established on this record any prior material breach of the agreement was excused.

### *Dependent or Independent Obligations*

The parties dispute whether the contractual obligations on which Horton produced evidence Stovall first breached were dependent or independent obligations within the Settlement Agreement. Horton acknowledges the general law,

> A breach of an independent covenant would give the nonbreaching party only a cause of action for damages resulting from the breach. . . . The breach of a dependent covenant gives the nonbreaching party the election to terminate the contract.

*Chambers v. Hunt Petroleum Corp.*, 320 S.W.3d 578, 586 (Tex. App.—Tyler 2010, no pet.). But Horton argues from *Johnson v. Walker*, "A contract is divisible when the performance by one party consists of several distinct and separate items and the price paid by the other party is apportioned to each item." 824 S.W.2d 184, 187 (Tex. App.—Fort Worth 1991, no writ). "[T]he intention of the parties, the subject

matter of the agreement, and the conduct of the parties" are the primary determinants. *Id.* Applied to this case, Horton argues the obligations in the Settlement Agreement are dependent because the agreement has one subject matter, the termination of Horton and Stovall's relationship in a way by which Stovall provided significant consideration in exchange for Horton keeping silent about her complaint about Stovall under-paying her then-boyfriend whom she later married, David Horton, his share of his recovery.[12]

Stovall argues none of the items in the Settlement Agreement are tied to one another, so each individual item is an independent covenant. Stovall argues *Criswell v. European Crossroads Shopping Ctr., Ltd.* requires specific conditional terms such as "if," "provided that," "on condition that," or a similar phrase to make terms of a contract dependent. 792 S.W.2d 945, 948 (Tex. 1990). But the language in *Criswell* on which Stovall relies is in a paragraph in which the supreme court gives guidance on how to determine if provisions of a contract create a condition precedent. *Id.* ("In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract. . . . In order to make performance specifically conditional, a term such as 'if', 'provided

---

[12] Previously, Stovall had represented James David Horton (before he married Horton) and one of his children in an injury claim that resulted in a significant recovery. Horton asserted, "Stovall was very angry with me because I was going to tell James [David] Horton that she changed his fee contract from 33 1/3% to 50%." Ultimately, David Horton and his son sued Stovall, but summary judgment was granted against their claims which this Court affirmed. *Horton v. Stovall*, No. 05-14-01477-CV, 2015 WL 7873728 (Tex. App.—Dallas Dec. 4, 2015, pet. denied).

that', 'on condition that', or some similar phrase of conditional language must normally be included.") (citations omitted). In fact, the supreme court immediately thereafter states, "If no such language is used, the terms will be construed as a covenant . . . ." *Id.* Accordingly, *Criswell* does not support Stovall's argument.

We agree with Horton the obligations in the Settlement Agreement are dependent. The Settlement Agreement is a unitary agreement providing the obligations of the parties in order to terminate their relationship including Horton remaining silent about her concerns about her boy-friend's under-payment from Stovall. The context of the Settlement Agreement is that days earlier Horton and her children had abruptly moved out of the Centenary Avenue house (Horton claims she was thrown out). Horton and her children needed to obtain their personal belongings and property. Horton and Stovall needed to separate their property, such as cars and real estate, including clarifying which of them owned what interest in the two parcels of real property on Centenary Avenue and in Spain. The property in Spain was in the middle of renovation and they both agreed it would be in their mutual interest for the renovations to be completed in order to sell the property. There is no language making the obligations independent. The $25,000 transfer Stovall was obligated to make on or before July 30, 2012 was related to provisions elsewhere in the agreement regarding the parties' stipulated intention to renovate and sell the property in Spain. So, we conclude that Stovall's obligation to transfer $25,000 on or before July 30, 2012 is a dependent obligation.

### *Quasi-Estoppel by Acceptance and Retention of Benefits*

In her summary judgment motion, Stovall presented quasi-estoppel as her "affirmative defense that precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken,"[13] quoting applicable authority. Stovall never argued quasi-estoppel avoids the consequences of a prior first breach.[14] Rather, she argues as a defense to Horton's counterclaim that Horton cannot accept some, significant benefits and then repudiate her obligations under the contract.[15] Stovall bases her theory of quasi-estoppel on Horton's acceptance of some of the benefits of the Settlement Agreement, most notably Horton's acceptance of $100,000 Stovall paid directly to Horton which Horton bargained for, accepted, and

---

[13] The opinions Stovall cites all involve quasi-estoppel as an affirmative defense. *See Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 864 (Tex. 2000) (supreme court reversed summary judgment granted on quasi-estoppel and acceptance of benefits in client's dispute against former lawyers); *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.—Corpus Christi 1994, writ denied) (court found against quasi-estoppel asserted defensively to counterclaim that oil and gas lease had terminated); *Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 770 (Tex. App.—Fort Worth 2010, no pet.) (reversing summary judgment that had been granted on affirmative defense of quasi-estoppel in departed partner's suit for equity distribution from former law firm).

[14] Horton challenges this in her first issue which she limited to the summary judgment relief granted on Stovall's claims. Horton divided into her second issue her challenges to Stovall's defensive summary judgment relief that Horton take nothing on Horton's counterclaim regarding the Centenary Property. Because both Horton's first and second issues challenge the same summary judgment, Horton's misperception of the defensive nature of the quasi-estoppel issue is irrelevant to her challenge to it.

[15] The competing arguments and evidence regarding prior first breach and quasi-estoppel are encompassed in the law of partial performance:

> It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach. This strict rule has been ameliorated in the law of building contracts by the doctrine of substantial performance, which allows a contract action by a builder who has breached, but nevertheless substantially completed, a building contract. However, when a breaching builder brings a contract action to recover damages for substantial performance, the builder bears the burden of proving he or she did substantially perform.

*Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (internal quotation and citations omitted).

retained, although Stovall's motion for summary judgment is not limited to this benefit.

Stovall is correct quasi-estoppel is an affirmative defense that avoids an unconscionable inconsistency of positions regarding a contract:

> Quasi-estoppel is an affirmative defense that "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken.  The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."

*Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 770 (Tex. App.—Fort Worth 2010, no pet.) (quoting *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000)); *see also Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied).  "Thus, quasi estoppel forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.—Corpus Christi 1994, writ denied).

Horton's appellate challenge is that she presented evidence and argued in response to the summary judgment motion that she was entitled to many of the benefits she received apart from the Settlement Agreement and the $100,000 was used for the parties' mutual project of renovating and selling the property in Spain. She supports both of these argument from *Lopez* in which the supreme court recognized that if a party is already entitled to benefits apart from an agreement,

–31–

merely retaining those benefits does not result in quasi-estoppel. *Lopez*, 22 S.W.3d at 864. Horton points out that many items of performance in the Settlement Agreement, which we have omitted from our discussion so far in this opinion, pertain to return of her and her children's property that Stovall had no right to retain. Stovall does not contest this on appeal, and we agree with Horton that return of her and her children's property does not constitute a benefit the retention of which would work a quasi-estoppel regarding the Settlement Agreement. *See id.*

Horton also argues essentially that she was just a conduit for all $100,000 of the two-checks provision in the Settlement Agreement because she used that money for the property in Spain which the Settlement Agreement stipulated mutually benefited both parties. So, Horton argues, she did not retain the benefits and the quasi-estoppel doctrine should not apply. Stovall's argument from Horton's retention of $100,000 provided for in the Settlement Agreement is complicated factually.

The agreement provided:

[Stovall] is executing two personal checks and giving them to [Horton] today as follows: (1) $50,000.00 (as advance for all further renovations labor costs on Spain Property) [and] (2) $50,000.00 (for living expenses, etc.)

So, the text of the Settlement Agreement factually supports Horton's position that the first $50,000 check was an "advance for all further renovations labor costs on Spain Property." But the Settlement Agreement provided the other $50,000 check

was "for living expenses, etc.," which contradicts Horton's argument. However, Stovall's summary judgment evidence included Horton's deposition testimony that Stovall wrote the two checks on a closed account, so she immediately made them good by transferring $100,000 to Horton's bank account. (There is no dispute Stovall fulfilled her two-checks obligation by wire transferring $100,000 to Horton's account). Horton testified by deposition that all $100,000 "was to pay the contractor in Spain that we already had put deposits down, and we had to have this so that we wouldn't lose what we already had on deposits for the office and the home." So, Horton brought forward evidence that none of the $100,000 was retained for her sole use, but all was used for the mutual "intention of the Parties to complete the renovation of said property at which time the parties will sell the property and divide the sale proceeds after deduction of any further expenses advanced" as stipulated in the Settlement Agreement.

Neither party provided any authority regarding whether the quasi-estoppel doctrine applies if the recipient demonstrates she was merely a conduit for those benefits to be used in furtherance of an endeavor to which the parties agreed in the contract that provided for the benefits. Horton's conduit argument cannot be dismissed, as Stovall argues, merely as an explanation as to how Horton spent her money. We agree with Stovall that, generally, how a person spent the money they retained would not change the quasi-estoppel analysis: it is a benefit all the same. But here, Horton's conduit argument is that the benefits were not for her but for a

project to which the parties agreed. Having reviewed the authorities explained above, we note none involve Horton's conduit argument, nor have we found any authority directly on point. The statement of mutual intent in the agreement together with the statement of the same purpose for the first $50,000 check weighs in favor of deciding that agreement recognizes funds channeled to the project in Spain were not contemplated as the sort of benefits that if retained by Horton could work a quasi-estoppel. On the other hand, even $50,000, the second check amount, is a significant benefit created by the statement in the agreement it was for Horton's personal use for "living expenses" which supports Stovall's argument taht retention of benefits works a quasi-estoppel. But the Settlement Agreement does not have a merger clause, Stovall actually tendered two insufficient funds checks, and when she quickly covered those checks with a $100,000 wire transfer according to Horton's testimony Horton used all the money to fund the property in Spain. On these facts, we decide Horton raised a genuine, material factual issues whether she retained the benefits, the $100,000, so it is a factual question for the trier of fact to resolve.

### *Res Judicata and Collateral Estoppel*

Stovall sought summary judgment on the additional ground that res judicata and collateral estoppel barred Horton from litigating her counterclaim for an ownership interest in the Centenary Avenue property. Stovall had brought a lien removal action under chapter 51 of the government code. That court granted an order removing the lien created by the documents Horton filed in the deed records.

–34–

Although Horton did not contest res judicata or collateral estoppel in the trial court, on appeal she argues Stovall's summary judgment evidence fails in the proof required for either res judicata or collateral estoppel. The failure of a summary judgment movant's proof to entitle them to the summary judgment that was granted is a legal sufficiency argument that Horton may raise for the first time on appeal without having preserved it in the trial court. *See Jose Fuentes Co. v. Alfaro*, 418 S.W.3d 280, 287 (Tex. App.–Dallas 2013, pet. denied) (en banc).

For res judicata to apply, Stovall must have shown in her summary judgment motion "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). For collateral estoppel to apply, Stovall's summary judgment evidence had to demonstrate that "(1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex. 1993) (internal quotations and citations omitted).

Horton argues Stovall's summary judgment evidence does not establish that Horton was a party to the lien-removal proceeding or even given notice of it. In fact, the district court's judgment removing the lien or claim expressly recites, "[n]o

–35–

testimony was taken from any party, nor was there any notice of the court's review . . . under the authority vested in the court under Subchapter J, Chapter 51, Government Code." Horton also argues the judgment expressly disclaims making a decision on the merits of the claim stating, "[t]his court makes no finding as to any underlying claims of the parties involved, and expressly limits its finding of fact and conclusion of law to the review of a ministerial act." In her amended brief, Stovall does not respond to the merits of Horton's argument.[16] We agree with Horton Stovall's summary judgment proof fails to establish the requisites for either res judicata or collateral estoppel, so neither doctrine supports the summary judgment.

### *Ownership of Property in Spain*

At the end of her first motion for summary judgment, Stovall requested summary judgment that Horton take nothing on Horton's alternative claim for declaratory relief that Stovall did not have an ownership interest in the property in Spain. Stovall's motion asserted the grounds she argued regarding the Centenary Avenue property should apply to her claim about the property in Spain. Horton argues the reasons we have reviewed above should apply to this last ground in Stovall's motion for summary judgment resulting in reversal. Stovall argues in her amended brief that the March 6, 2015 summary judgment order did not grant relief pertaining to the property in Spain because it is limited to the Centenary Avenue

---

[16] This argument in Horton's amended brief is one of the foci of Stovall's procedural complaint that we allowed Horton to re-brief too much which we resolved at the beginning of this opinion.

property by the provision, "It is further ORDERED that Defendant [Horton] take nothing on her counterclaim for declaratory judgment *with regard to the Centenary Property*." (Handwritten interlineation italicized). But the previous paragraph in the order generally provided, "It is therefore, ORDERED that Plaintiff's Amended Motion for Partial Summary Judgment is GRANTED . . .," and the requested relief was in the motion. Because of that potential ambiguity in the order that the first paragraph granted the motion without limitation and for clarity for the parties and the trial court upon remand, we decide Horton is correct that our decisions regarding her previous arguments results in reversal of the summary judgment regarding the property in Spain.[17]

### Conclusion of First and Second Issues

Although Horton raised other arguments, we need not decide them in order to resolve the first and second issues. By concluding Horton raised genuine, material factual issues about Stovall's grounds for summary judgment, we necessarily conclude the trial court erred in granting summary judgment. So, we sustain Horton's first and second issues and reverse the first partial summary judgment signed on March 6, 2015.

---

[17] We note there is mention an entity in Spain may own the property which may result in Stovall and Horton not having standing to assert the claims that either of them owns the property in Spain. This is entirely undeveloped in our record. On remand, the trial court has a duty before deciding the merits of the case to ensure it has subject matter jurisdiction, including determining the parties have standing to litigate the claims before the court.

***Third Issue: Genuine, Material Factual Issues Precluded Some of the Relief Granted in the June 29, 2015 Partial Summary Judgment (Horton's Counterclaims)***

In her third issue, Horton challenges the partial summary judgment signed on June 29, 2015 that granted Stovall judgment that Horton "take nothing on her counterclaims against" Stovall. Stovall's second motion for summary judgment contained traditional grounds and the last paragraph of several of Stovall arguments asserted no-evidence grounds related to certain elements of the immediately preceding traditional argument.

### *Tort Counterclaims*

Horton's amended brief acknowledges she did not preserve arguments sufficient to challenge the summary judgment regarding her counterclaims for various torts, so counsel could not ethically challenge the summary judgment on appeal as to those claims. But Horton challenges the remainder of the summary judgment granted against her counterclaim for Stovall's breaches of the Settlement Agreement.[18] Accordingly, we do not disturb the June 29, 2015 summary judgment

---

[18] Horton's brief states,

> Horton's summary judgment response failed to respond meaningfully to Stovall's assertion that Horton's remaining tort counterclaims are barred by limitations. (CR:980) Horton responded only that she timely sent a demand letter. (CR:1113) Accordingly, counsel cannot ethically challenge the dismissal of her tort counterclaims for conversion of $56,000 in cash, invasion of privacy, and (to the extent it is pleaded as a tort action rather than a remedy for breach of contract) unjust enrichment. Appellant's Issue 3 is therefore limited to Horton's counterclaim for breach of contract based on Stovall's failure to perform her obligations pursuant to the Settlement Agreement.

(Footnote omitted).

that Horton take nothing on her counterclaims for conversion of $56,000 in cash, invasion of privacy, and unjust enrichment.[19]

### *Title to the 2009 Mercedes*

Horton challenges the summary judgment as to her counterclaim for Stovall's alleged breach of the Settlement Agreement by failing to transfer title to the 2009 Mercedes to Horton. Stovall's motion included a clearly labeled no-evidence ground in a separate paragraph:

> **No Evidence.** There is no evidence of at least one element of Hames' counter-claim for breach of contract: (1) no evidence that the failure of [Stovall/Stovall & Associates] to transfer the title proximately caused damages to Hames; (2) no evidence that Hames suffered any damages.

Horton argues Stovall's no-evidence motion "fails to comply with Rule 166a(i)" because "Stovall's grounds are not directed to Horton['s] contract claim as a whole, but [Stovall] instead attempts to fracture Horton's claim into several separate causes of action, with each requiring separate proof of damages." Horton is correct in so far as "a motion for no-evidence summary judgment that only generally attacks a factual theory, without specifying the elements of the claims being attacked, is insufficient to support a no-evidence summary judgment." *Garcia v. State Farm Lloyds*, 287 S.W.3d 809, 819 (Tex. App.—Corpus Christi 2009, pet. denied). But

---

[19] In Horton's third amended answer and counterclaim filed on January 8, 2015, Horton alleged three counterclaims sounding in tort in her then-pending counterclaims: (1) conversion of $56,000 in cash, (2) invasion of privacy, and (3) unjust enrichment. Horton's amended brief concedes those three. *See supra* n. 18. Stovall states Horton conceded "5 of the 6 causes of action for torts. . . ." Stovall does not explain to what she refers and her motion for summary judgment does not delineate five claims as allegations sounding in tort. Stovall's motion for summary judgment does address multiple sub-parts within the three major categories of Horton's counterclaims sounding in tort.

this en banc Court has disagreed with Horton's argument when it decided a no-evidence ground can challenge a factual theory pursuant to rule 166a(e) so long as the no-evidence ground connects the challenge to an element of a claim or defense—

> [A] motion for no-evidence summary judgment may challenge distinct factual allegations and theories of recovery—*see* rule 166a(e)—such a challenge must be specific and connected to a particular element of a cause of action or defense to meet the requirements of the rule.

*Alfaro*, 418 S.W.3d at 284 (citing TEX. R. CIV. P. 166a(i); *Garcia*, 287 S.W.3d at 819; *Pakideh v. Pope*, No. 13-08-00560-CV, 2010 WL 3820899, at *4–5 (Tex. App.—Corpus Christi Sept. 30, 2010, no pet.)). Here, Stovall adequately connected her challenge to one of Horton's factual theories (failure to transfer title to the 2009 Mercedes) with an element of Horton's cause of action (damages). Stovall's motion was a proper use of rule 166a(i).

Stovall argues that in the trial court Horton did not respond to this ground, nor did Horton (or Stovall) produce or point out any evidence of damages in the record. We agree with Stoval that Horton did not address this ground for summary judgment in the trial court. Rule 166a(i) requires a trial court to grant no-evidence grounds for summary judgment unless evidence on the challenged element is produced and pointed out to the trial court. *See* TEX. R. CIV. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact."). Accordingly, we overrule Horton's issue as to

transfer of title to the 2009 Mercedes and affirm the summary judgment that Horton take nothing on that ground for relief in her counterclaim.

### *Return of Horton's Personal Property Including Jewelry*

Horton's breach of the Settlement Agreement counterclaim included a claim that Stovall had not returned all of her personal property located in the Centenary Avenue house or Stovall's office, including all of Stovall's jewelry. The Settlement Agreement provided in regard to such property:

<u>Jewelry and Personnal [sic] Items</u>

[Stovall] has delivered all personal items belonging to [Horton] found at 3401 Centenary and 6601 LBJ Freeway, #180, Dallas, Texas to a storage facility located in Dallas, Texas. [Stovall] has provided [Horton] a key to said storage unit and the passcode to gain entry.

[Six items of jewelry in five categories are described as having been gifted previously by Stovall to Horton].

[Stovall] to hand deliver to [Horton] all of the above jewelry on 07/29/2012.

Horton relies on her testimony that numerous items of her personal property were not in the storage unit notwithstanding the recitation to the contrary in the Settlement Agreement ("all personal items belonging to" Horton). Horton also points to her testimony that $56,000 of cash left in a closet, two pieces of jewelry not listed in the Settlement Agreement, and furniture were part of her personal property and were not in the storage unit or otherwise returned to her.

Stovall argues the Settlement Agreement does not obligate her to return Horton's personal property but merely recites she had relocated all of Horton's

personal property to the storage unit. Stovall argues the Settlement Agreement does not obligate her to return items of cash, jewelry, and furniture not listed in the Settlement Agreement.

Horton and Stovall each argue the Settlement Agreement obviously means what they contend it means thereby implicitly contending the agreement is unambiguous. Neither pleaded or contends the agreement is ambiguous. Even when "[b]oth parties assert[] that the property settlement agreement was unambiguous," on appeal a court may conclude a contract is ambiguous and require the ambiguity to be submitted to the trier of fact. *Coker v. Coker*, 650 S.W.2d 391, 392, 393 (Tex. 1983); *see also White v. Moore*, 760 S.W.2d 242, 243 (Tex. 1988). "When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Coker*, 650 S.W.2d at 393 (citing *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980)). In *Coker*, notwithstanding both parties asserted a settlement agreement was *unambiguous*, and notwithstanding the court of appeals determination the contract had a clear, unambiguous meaning, the supreme court concluded, "[T]his agreement is ambiguous and the trial court erred in granting summary judgment. The trier of fact must resolve the ambiguity by determining the true intent of the parties." 650 S.W.2d at 394–95 (citing *Trinity Universal Ins. Co. v. Ponsford Bros.*, 423 S.W.2d 571, 575 (Tex. 1968)).

Stovall and Horton's Settlement Agreement is a handwritten document separating the personal and financial lives of two people. It does not contain a merger clause, a disclaimer of reliance clause, or mutual releases of liability. Although Stovall was a lawyer and Horton was her legal assistant, neither was represented by counsel. Horton's declaration explains the context of the agreement was Horton and her children having hurriedly left[20] their residence on Centenary Avenue they shared with Stovall, leaving behind their belongings. That same day, Stovall fired Horton and one of her daughters from their employment at Stovall's law firm. The agreement provides for, among other things, how Horton and her family would obtain their personal property that was located in the residence and at the law firm. Every provision about property involves resolution of possession and ownership which in some situations included transfer or delivery of property or documents pertaining to ownership. The provisions about Horton's personal property and jewelry were combined under one heading. The provisions recognize an obligation by Stovall to return the items to Horton by reciting Stovall had already moved "all personal items belonging to" Horton to a storage unit and would have the jewelry personally delivered to Horton the following day, July 29, 2012. In the absence of precise language in these provisions or throughout the agreement, a factfinder could decide the Settlement Agreement means Stovall is obligated to

---

[20] In her declaration, Horton testified Stovall ejected Horton and her children using threats of violence such that they left without their belongings.

return to Horton "all personal items belonging to" her; or the factfinder might decide the personal property provision is a recital without an obligation. On this record, we conclude, "[T]his agreement is ambiguous and the trial court erred in granting summary judgment. The trier of fact must resolve the ambiguity by determining the true intent of the parties." *Coker*, 650 S.W.2d at 394–95.

Our decision the Settlement Agreement is ambiguous about return of the personal property undermines Stovall's summary judgment proof. Notwithstanding Stovall's testimony she returned to Horton everything she found, Horton testified Stovall did not do so and specifically identified some items that were not returned: $56,000 cash left in a closet, two pieces of jewelry, and furniture. In opposing Stovall's traditional and no-evidence grounds for summary judgment, Horton as the non-movant did not have the burden to marshal her evidence or prove her factual contentions conclusively; her evidentiary burden was to present evidence that raised a genuine, material factual issue sufficient to defeat the movant's traditional proof or that addressed the element challenged as being unsupported by any evidence. *See Grant*, 73 S.W.3d at 215. We conclude Horton has done so regarding her counterclaim alleging Stovall breached the Settlement Agreement by failing to return all of Horton's personal property.

### *Deposited Paychecks*

Horton argues the trial court erred in granting summary judgment against her counterclaim that Stovall breached the Settlement Agreement by failing to return the

proceeds of Horton's compensation, including a $300,000 bonus, deposited into two bank accounts at JP Morgan Chase. The Settlement Agreement provided,

> On or before July 30, 2012[,] [Stovall] will review the account [illegible mark] of [Stovall] + [Horton] to *refund deposits of paychecks*.

(Emphasis added).

Stovall first argues the Settlement Agreement did not obligate her to return any specific money to Horton; only to check her accounts to determine if there were any funds that were the proceeds of Horton's compensation. She stated in her affidavit there was none when she checked. Horton testified in her declaration,

> Stovall gave me a 300,000.00 bonus check because I never received bonuses as we did not have the money in the law firm. Also my salary was the same for years so when we got a big payoff from the Horton case she made up for it giving me back salary.

In her first affidavit, Horton testified,

> I had two checking accounts. 1. There is an account (No. 917027674) which is a joint checking account in the name of [Stovall] and [Horton]. 2. The second account is a personal account in the sole name of [Horton] $345,090.24 (account no. 991351636)[.] Stovall took all the money out of my personal bank account, $345,090.24 (account no. 991351636). Stovall took all the money out of our joint account also.

In nearly identical statements in Horton's affidavit and her declaration, she testified on "July 23, 2012 Plaintiff Stovall converted ["all" is added in the declaration] my funds from my personal bank account in the amount of $349,000.00 from Chase Banks." Stovall criticizes Horton's statements as not identifying from which bank account the funds were allegedly converted and identifying how much of the funds were the proceeds of paychecks. But we examine the record in the light most

favorable to Horton as the nonmovant, indulging every reasonable inference in her favor, and resolving any doubt against Stovall as the movant. *See Kalyanaram*, 230 S.W.3d at 925. Horton's testimony that she received a $300,000 bonus together with regular pay that was deposited in her JP Morgan Chase Bank accounts, her testimony that her personal account had $345,090.24, her testimony that Stovall took all $345,090.24 out of her personal account and emptied their joint account, combined with her later declaration that Stovall converted from her personal bank account at JP Morgan Chase $349,000 raises more than a scintilla of a genuine, material fact issue that Stovall took and did not return the proceeds of Horton's compensation. As to Stovall's argument the Settlement Agreement only obligated her to check whether there was money remaining in the accounts, she ignores the requirement that she "refund deposits of paychecks." Stovall cannot avoid breach of her obligation to "refund deposits of paychecks" by proving on the day she checked the balances (after she emptied the accounts according to Horton's testimony) there were no funds on deposit. We conclude, a fact issue exists that precluded summary judgment on Horton's counterclaim for return of the proceeds of her compensation.

### *Transfer of $25,000 on or before July 30, 2012*

The parties repeat their dispute about whether there are genuine, material fact issues regarding Horton's counterclaim Stovall failed to comply with the obligation to transfer $25,000 on or before July 30, 2012. Stovall included in her motion

Horton's first affidavit which we already decided created a genuine, material fact issue that Stovall did not transfer the money.

Stovall also argues her no-evidence ground that Horton did not produce evidence of Horton's damages supports the summary judgment that Horton take nothing. We disagree. When a damages question is submitted to a jury, it is framed, "What sum of money, if now paid in cash, would reasonably compensate" the claimant for the alleged injury. Stovall's argument assumes without proof a wire transfer is not a cash equivalent. It is. Stovall is left with her argument that the transfer was to be made to a third party for use in the parties' mutual project to complete the renovations and sell the property in Spain. Stovall nowhere disputes Horton does not own at a minimum a one-half interest in the Spanish property project. Reviewing the evidence in the light most favorable to Horton the nonmovant and construing all inferences in her favor, she has produced evidence she was damaged in an amount up to $25,000. Accordingly, we decide the trial court erred in granting summary judgment that Horton take nothing on this component of her counterclaim.

### *Conclusion of Third Issue*

We decided above the June 29, 2015 summary judgment should not be disturbed regarding its relief that Horton take nothing on her counterclaims for conversion of $56,000 in cash, invasion of privacy, and unjust enrichment. We further decided the summary judgment was proper that Horton take nothing on her

claim for Stovall's failure to transfer title to the 2009 Mercedes.  On all other relief in the summary judgment, we concluded Horton raised genuine, material factual issues requiring the summary judgment to be reversed.

### Fourth Issue: Reversal of the First Summary Judgment Requires Reversal of the March 14, 2016 Partial Summary Judgment (Stovall's Attorney's Fees)

In her fourth issue, Horton challenges the summary judgment signed on March 14, 2016 awarding Stovall her attorney's fees.[21]  Horton argues the attorney's fees award should be reversed if we reversed the March 6, 2015 partial summary judgment.  Because we did reverse the March 6, 2015 partial summary judgment, we agree.  *See Forney 921 Lot Dev. Partners I, L.P.*, 349 S.W.3d at  273.

### Fifth Issue: Severance and Abatement of Claims involving JP Morgan Chase Bank, N.A. Was Proper Then but Should Be Reconsolidated Now

In her fifth issue, Horton asserts the trial court abused its discretion in its November 20, 2014 order that severed and abated one of Horton's counterclaims.  Sixth months before she filed her counterclaims in this suit, Horton had sued JP Morgan Chase Bank, N.A., claiming that the bank had improperly allowed Stovall to withdraw $345,090.20 from Horton's account.  That case was assigned to the County Court at Law No. 5 in Dallas County.  Within two weeks, JP Morgan Chase joined Stovall in Horton's lawsuit.  Six months later, Horton filed the conversion

---

[21] Horton directs her challenge to our prior opinion affirming the attorney's fees.  But the supreme court already reversed our opinion, so we only consider Horton's challenge to the summary judgment.

counterclaim at issue in this suit pending in the 162nd District Court. In her brief, Horton contends that the severed claim was a compulsory counterclaim that arose from the same transaction as her other counterclaims and Stovall's original claims against her.

A trial court has broad discretion in matters of severance and consolidation of causes. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. A counterclaim is compulsory if it is:

> within the jurisdiction of the court, *not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party*, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

TEX. R. CIV. P. 97 (emphasis added). At the time Horton added the counterclaim regarding the JP Morgan Chase account, it was already "the subject of a pending action" in another trial court. We cannot conclude on the record before the trial court and us that the trial court abused its discretion in its November 20, 2014 order of severance and abatement. We note, however, JP Morgan Chase prevailed in Horton's case against the bank which then dismissed Stovall. *See Horton v. JP Morgan Chase Bank, N.A.*, No. 05-16-00472-CV, 2018 WL 494776 (Tex. App.— Dallas Jan. 22, 2018, no pet.). We affirmed the summary judgment. *Id.* As a result, there no longer exists the factual basis upon which the trial court made its decision years ago and, according to the record available to us, Horton's severed claim against

Stovall regarding the bank accounts has not been resolved. We conclude that upon remand the trial court should reconsolidate Horton's claims. Nevertheless, we overrule Horton's fifth issue and affirm the trial court's severance order.

## V.
### CONCLUSION

On the amended briefs before us on remand, we affirm the summary judgment that Horton take nothing on her counterclaims for conversion of $56,000 in cash, invasion of privacy, unjust enrichment, and her claim for Stovall's failure to transfer title to the 2009 Mercedes. In all other regards, we reverse the summary judgments. We also affirm the order of severance and abatement but we direct the trial court upon remand to reconsolidate the severed and abated claim. We remand the case to the trial court for further proceedings consistent with this opinion.

/David Evans/
DAVID EVANS
JUSTICE

160744F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

ROBBIE LESA HAMES HORTON,
Appellant

No. 05-16-00744-CV        V.

KIMBERLY A. STOVALL,
Appellee

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-12-14190.
Opinion delivered by Justice Evans.
Justices Pedersen, III and Reichek
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** the summary judgment that appellant Robbie Lesa Hames Horton take nothing on her counterclaims for conversion of $56,000 in cash, invasion of privacy, unjust enrichment, and her claim for Kimberly A. Stovall's failure to transfer title to the 2009 Mercedes. We also **AFFIRM** the order of severance and abatement but we direct the trial court to reconsolidate the severed and abated claim. In all other respects, we **REVERSE** the trial court's granting of the summary judgments. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this December 23, 2020.